# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| STEVE RIDDICK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LARRY COLLINS, *et al.*, )<br>)<br>Defendants. ) | Civil Action No. 7:20cv00742<br><br>**MEMORANDUM OPINION**<br><br>By:   Hon. Thomas T. Cullen<br>        United States District Judge |

Plaintiff Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against correctional and medical personnel at Red Onion State Prison ("Red Onion").[1] Nineteen defendants employed by the Virginia Department of Corrections (collectively, the "VDOC Defendants") have moved to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] The case is presently before the court on the VDOC

---

[1] This case is but one of *many* cases Riddick has brought against Red Onion personnel in this court. *See Riddick v. Franklin, et al.*, 7:20cv00081 (W.D. Va. Feb. 3, 2020); *Riddick v. Mullins, et al.*, 7:20cv00096 (W.D. Va. Feb. 10, 2020); *Riddick v. Trent, et al.*, 7:20cv00447 (Aug. 4, 2020); *Riddick v. Lambert, et al.*, 7:20cv00448 (W.D. Va. Aug. 4, 2020); *Riddick v. Mathena, et al.*, 7:20cv00449 (W.D. Va. Aug. 4, 2020); *Riddick v. Mickles, et al.*, 7:20cv00559 (W.D. Va. Sept. 17, 2020); *Riddick v. Moore, et al.*, 7:20cv00560 (W.D. Va. Sept. 17, 2020); *Riddick v. Kiser, et al.*, 7:20cv00561 (Sept. 17, 2020); *Riddick v. Kegley, et al.*, 7:20cv00562 (W.D. Va. Sept. 17, 2020); *Riddick v. Kiser, et al.*, 7:20cv00580 (W.D. Va. Sept. 28, 2020); *Riddick v. Bunch, et al.*, 7:20cv00597 (W.D. Va. Oct. 6, 2020); *Riddick v. Gilbert, et al.*, 7:20cv00598 (W.D. Va. Oct. 6, 2020); *Riddick v. McCowan, et al.*, 7:21cv00138 (W.D. Va. Mar. 5, 2021); *Riddick v. Stanley, et al.*, 7:21cv00177 (W.D. Va. Mar. 26, 2021); *Riddick v. Kiser, et al.*, 7:21cv00178 (W.D. Va. Mar. 26, 2021); *Riddick v. Phillips, et al.*, 7:22cv00290 (W.D. Va. June 6, 2022); *Riddick v. Mullens, et al.*, 7:22cv00291 (W.D. Va. June 6, 2022); *Riddick v. Barton, et al.*, 7:22cv00297 (W.D. Va. June 9, 2022); *Riddick v. Clarke, et al.*, 7:22cv00304 (W.D. Va. June 13, 2022); *Riddick v. White, et al.*, 7:22cv00437 (W.D. Va. Aug. 1, 2022); *Riddick v. Mullens, et al.*, 7:23cv00011 (W.D. Va. Jan. 4, 2023); *Riddick v. King, et al.*, 7:23cv00012 (W.D. Va. Jan. 4, 2023); *Riddick v. Rose, et al.*, 7:23cv00072 (W.D. Va. Jan. 31, 2023).

[2] The motion was filed on behalf of the following remaining defendants: Penny McCowan, Shannon Fuller, S. Fletcher, L. Hall, C. Mickles, J. Richards, Ryan Clevinger, M. Banton, Robert Bivens, Carl Manis, James T. Jones, D. Gardner, John H. Mullins, Barry Mullins, J. Boyd, Larry Collins, Jimmy Mullins, Raeann Kegley, and G. Ridings.

Defendants' motion to dismiss (ECF No. 62) and Riddick's motion to amend (ECF No. 65). For the reasons set forth below, the court will grant the VDOC Defendants' motion and deny Riddick's motion.

## I. BACKGROUND

This case primarily stems from an incident that occurred in a housing unit at Red Onion on the morning of July 17, 2020. At the time of the incident, Riddick was fully restrained while using a kiosk in the housing unit. As Correctional Officers Creed and J. Mullins were escorting another inmate down the stairway, the inmate pulled away from the correctional officers and freed one of his hands from his handcuffs. The inmate then ran toward Riddick and punched him several times. (*See* Compl. pg. 1 [ECF No. 1].)

Riddick asserts multiple claims arising from or related to the assault. The court construes his complaint, as the VDOC defendants do, as asserting the following claims:

> **Claim 1**: Defendants Creed and J. Mullins violated his due process rights by failing to protect him, putting him at risk of harm, placing him in danger, being deliberately indifferent to his safety, and by subjecting him to excessive force and cruel, unusual, and inhumane punishment and assault and battery when they let the inmate assault him, in violation of the First, Eighth and Fourteenth Amendments.
>
> **Claim 2**: Defendant J. Mullins denied Plaintiff access to the kiosk and media out of retaliation, in violation of the First and Sixth Amendments.
>
> **Claim 3**: Defendant Trent violated the First, Eighth, and Fourteenth Amendments when he was willfully negligent to Plaintiff's mental health after the assault by denying him mental health care and by putting him at the risk of harm and further harm out of retaliation.
>
> **Claim 4**: Defendants Boyd and Mickles violated the Eighth and Fourteenth Amendments and were willfully negligent by placing

Plaintiff in a recreation cage near the inmate who had previously assaulted him.

**Claim 5**: Defendants Collins, McCowan, and Ridings violated the First, Eighth, and Fourteenth Amendments when they failed to keep J. Mullins separate from Plaintiff after he was assaulted by another inmate. Plaintiff also alleges that Collins, McCowan, and Ridings denied him complaint forms out of retaliation.

**Claim 6**: Plaintiff directs this claim at Defendants Deel and Jenkins who are represented by separate counsel.[3]

**Claim 7**: Defendants B. Mullins, J.H. Mullins, and A. Gardner searched Plaintiff's cell out of retaliation and discrimination in violation of the First, Fourth, and Fourteenth Amendments; Defendant B. Mullins confiscated his property without due process.

**Claim 8**: Defendant Ridings kept his foot on the chain of Plaintiff's leg irons during the nurse's assessment in violation of his First and Eighth Amendment rights and as an act of willful negligence.

**Claim 9**: Defendants Collins, McCowan, Ridings, Richards, Jones, Banton, and Hall denied Plaintiff complaint forms, in violation of the Fourteenth Amendment.

**Claim 10**: Defendants McCowan and Fletcher failed to address Plaintiff's complaint forms properly, in violation of the Fourteenth Amendment.

**Claim 11**: Defendant Fuller determined Plaintiff's grievance to be unfounded out of retaliation and in violation of the First and Fourteenth Amendments.

**Claim 12**: Defendant Kegley discussed information about Plaintiff with another inmate, which put him at risk of harm, and Kegley did so in retaliation and in violation of the First and Eighth Amendments.

---

[3] The court previously dismissed the claims against Defendant Deel and Jenkins. (*See* Order, Mar. 30, 2022 [ECF No. 154].)

>**Claim 13**: Defendants Manis and Bivens failed to properly address Plaintiff's grievances in violation of Plaintiff's due process rights.
>
>**Claim 14**: Defendants Collins, Kegley, and Clevinger denied Plaintiff access to a notary public for this complaint out of retaliation in violation of the First, Sixth, and Fourteenth Amendments.

(Defs.' Mem. Supp. Mot. Dismiss 2–4 [ECF No. 63] (cleaned up) (citing Compl. pgs. 1–21).) Riddick does not dispute this characterization of his claims in his response to the VDOC Defendants' motion.[4]

Riddick has moved to amend his complaint to add Correctional Officer J. Deel as a defendant. Riddick states that he recently discovered that Deel "was working the control booth in the C-5 pod" on July 17, 2020, when Riddick was assaulted by the other inmate. (Pl.'s Mot. Amend 1 [ECF No. 65].) Riddick alleges that Deel "didn't do anything to stop or try to stop the assault," thereby violating his rights under the Eighth Amendment. (*Id.* at 1–2.)

## II.   STANDARDS OF REVIEW

The VDOC Defendants' motion to dismiss is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible

---

[4] Riddick styled his response as a "mo. for sum. jgmt. in resp. to defense mo. to dismiss." (Pl.'s Resp. Opp'n Mot. Dismiss 1 [ECF No. 76].) To the extent that Riddick seeks summary judgment on any of the claims that the VDOC Defendants have moved to dismiss, his request for summary judgment will be denied as moot.

when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 15 provides that a party may amend a pleading with the court's leave and that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may deny leave to amend a pleading if the proposed amendment would be futile. *Save Our Sound OBX, Inc. v. N.C. DOT*, 914 F.3d 213, 228 (4th Cir. 2019). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Id.* (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. VDOC Defendants' Motion to Dismiss

The court will first address the motion to dismiss filed by the VDOC Defendants. The VDOC Defendants argue that Claims 4, 7, 9, 10, 11, 13, 14, and part of Claim 5 are subject to dismissal for failure to state a claim upon which relief can be granted. They also argue that claims for monetary damages against the defendants in their official capacities are not cognizable under § 1983. The court agrees with the VDOC Defendants and will grant their motion to dismiss.

#### 1. Official-Capacity Claims

Riddick states that he is asserting claims against the VDOC Defendants in their

individual and official capacities. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In their official capacities, the VDOC Defendants are immune from suit under § 1983 and cannot be sued for monetary damages. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). Although official-capacity claims for injunctive relief can sometimes be maintained, *see, e.g.*, *Ex parte Young*, 209 U.S. 123 (1908), Riddick's complaint does not seek any injunctive relief. (Compl. pg. 21.) Thus, all official-capacity claims against the VDOC Defendants must be dismissed.

### 2. Claim 4

In Claim 4, Riddick seeks to hold Boyd and Mickles liable under § 1983 and state law for stationing him in a recreation cage near the same inmate who had assaulted him on July 17, 2020. According to the complaint, Boyd and Mickles placed Riddick and the other inmate in adjacent recreation cages on July 25, 2020, from 7:30 a.m. until 10:00 a.m. Riddick alleges that the other inmate threatened to harm him again and that the inmate "could've thr[own] something on [him and] spit on [him] through the rec. cage." (Compl. 4.) Riddick claims that Boyd and Mickles acted with deliberate indifference to his safety, in violation of the Eighth and Fourteenth Amendments, and that they were "willfully negligent." (*Id.* at 14–15.)

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). As a corollary to this prohibition, prison officials are required to "take reasonable measures to guarantee the safety of the inmates," and they have a specific "duty . . . to protect prisoners from violence at the

hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Prison officials violate the Eighth Amendment "only when two requirements are met." *Id.*

To state a valid claim of this nature, a plaintiff must first "establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)); *see also De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (explaining that "[o]nly an extreme deprivation, that is a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement"). The plaintiff must also show that the prison official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "In this context, the required state of mind that must be established is 'deliberate indifference to inmate health or safety.'" *Danser*, 772 F.3d at 347 (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference is a "very high standard" that cannot be met by a showing of "mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Danser*, 772 F.3d at 346 (quoting *Farmer*, 511 U.S. at 837). Importantly, "the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Applying these principles, the court concludes that the factual allegations against Boyd and Mickles are insufficient to satisfy either element. With respect to the first element, Riddick does not allege that he suffered *any* injury as a result of being placed in a recreation cage near the other inmate, much less "a serious or significant physical or emotional injury." *De'Lonta*, 330 F.3d at 634 (internal quotation marks and citation omitted). Nor does he allege facts from which the court can reasonably infer that he faced a "substantial risk of such serious harm" as a result of being located in an adjacent recreation cage for a few hours. *Id.* Similarly, with respect to the second element, Riddick does not allege any facts that would suggest that Boyd or Mickles actually knew of and disregarded a substantial risk to Riddick's health or safety. Thus, the complaint fails to state a cognizable Eighth Amendment claim against these defendants.[5]

The complaint also fails to state a cognizable claim of willful and wanton negligence under Virginia law. "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999). "Willful and wanton negligence is one of three levels of negligence." *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997). This level of negligent conduct involves "acting consciously in disregard of another person's rights or acting with reckless indifference

---

[5] To the extent that Riddick intended to assert a separate due process claim under the Fourteenth Amendment, such claim is also subject to dismissal. In short, Riddick has not alleged facts sufficient to show that the challenged conditions of confinement constituted the type of "atypical and significant hardship" that triggers the procedural protections of the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Martin v. Duffy*, 858 F.3d 239, 253–54 (4th Cir. 2017) ("Because Martin's complaint does not include any factual allegations establishing that he experienced conditions during his temporary placement in segregation that were atypical and significantly harsh compared to [those of] the general population, Martin failed to allege sufficient facts to state a plausible due process claim.") (cleaned up).

to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (cleaned up). "While each case must be resolved on its own facts, willful and wanton negligence generally involves some type of egregious conduct—conduct going beyond that which shocks fair-minded people." *Id.* at 102.

As noted above, Riddick does not allege that he suffered any injury as a result of being placed in a recreation cage near the other inmate. Because injury is "an essential element to a negligence cause of action," *Fountainhead Title Grp. Corp. v. Courthouse Search*, 122 F. App'x 10, 13 (4th Cir. 2005), this deficiency is fatal to Riddick's claim under Virginia law. Additionally, Riddick does not plausibly allege that Boyd and Mickles knew that placing the inmates in adjacent recreation cages "probably would cause injury" to Riddick or that such action was otherwise so "egregious" as to support a claim of willful and wanton negligence. *Harris*, 486 S.E.2d at 101–02. Accordingly, the motion to dismiss will be granted as to Claim 4.

### 3. Claims 5, 9, 10, 11, and 13

As part of Claim 5, and in Claims 9, 10, 11, and 13, Riddick alleges that several defendants violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment by denying requested grievance forms or failing to respond to grievances properly. More specifically, Riddick alleges that Collins, McCowan, Ridings, Banton, Jones, Richards, and Hall failed to provide forms for him to "grieve the incidents in [his] complaint," causing him to file untimely grievances, and that Collins, McCowan, and Ridings did so "out of retaliation [for him] wanting to grieve the assault incident." (Compl. pgs. 6–7, 15.) Riddick further alleges that McCowan, Fletcher, and Fuller did not properly

address or respond to his grievances pertaining to the assault by the other inmate, the treatment he received following the assault, or the fact that he was placed in a recreation cage near the other inmate. (*Id.* at 8.) Riddick similarly alleges that Manis and Bivens improperly upheld the denial of his grievances on appeal. (*Id.* at 20.)

Riddick's grievance-related allegations do not state a cognizable claim under the Due Process Clause of the Fourteenth Amendment. The Fourth Circuit has made clear that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). Consequently, an inmate "cannot bring a § 1983 claim alleging denial of a specific grievance process . . . ." *Id.* Likewise, "any mistakes [the defendants] made in investigating or ruling on plaintiff's grievances do not rise to the level of a due process violation." *Smith v. Jones*, No. 1:20cv01157, 2021 WL 4046403, at *4 (E.D. Va. Sept. 3, 2021); *see also Christian v. Thomas*, No. 3:20cv00804, 2022 WL 1303270, at *11 (E.D. Va. May 2, 2022) ("Because Plaintiff enjoys no constitutional right to participate in grievance proceedings, his allegation that Defendant Reedy improperly responded to his grievance is legally frivolous.") (collecting cases). Consequently, the due process claims asserted in Claims 9–11 and 13 must be dismissed.

As part of Claim 5, Riddick alleges that Collins, McCowan, and Ridings denied him grievance forms in retaliation for him "wanting to grieve the assault incident." (Compl. pg. 15.) Similarly, as part of Claim 11, Riddick alleges that Defendant Fuller determined that his grievance regarding the assault was unfounded "in retaliation for . . . grieving the assault." (*Id.* at 19.)

Although inmates do not have a due process interest in accessing a prison grievance procedure, they "possess a First Amendment right to be free from retaliation for filing a grievance." *Booker*, 855 F.3d at 546. In order to state a colorable retaliation claim under § 1983, an inmate must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between the inmate's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

Here, the VDOC Defendants acknowledge that Riddick has sufficiently alleged that he engaged in protected First Amendment activity by filing or attempting to file grievances. *See id.* (holding that an inmate satisfied the first element by "alleging that he filed a grievance against a sergeant for battery"). The court agrees with the VDOC Defendants, however, that Riddick's allegations are insufficient to satisfy the second element of a First Amendment retaliation claim.

The second element requires a plaintiff to demonstrate that the defendant took some action that adversely affected his First Amendment rights. *Id.* The Fourth Circuit has "cautioned that '[n]ot all retaliatory conduct tends to chill First Amendment activity.'" *Snoeyenbos v. Curtis*, 60 F.4th 723, 730 (4th Cir. 2023) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005)). To recover for retaliation, a plaintiff "must show that the defendant's conduct resulted in something more than a *de minimis* inconvenience to [his] exercise of First Amendment rights" and that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500.

Measured against these standards, Riddick's allegations fall short of establishing that the named defendants took some action that adversely affected his First Amendment rights. In similar circumstances, courts have held that the "failure to provide . . . grievance forms in a timely fashion would not chill a person of ordinary firmness from continuing to file grievances," *Green v. Snyder*, 525 F. App'x 726, 730 (10th Cir. 2013), and that "[t]he denial of grievances is not an 'adverse action' for retaliation purposes," *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015). As the Eighth Circuit has explained, such actions are "of little consequence because inmates are only required to exhaust *available* remedies before seeking judicial relief." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies *as are available* are exhausted.") (emphasis added).

Consistent with these decisions, the court concludes that neither the denial of grievances nor the failure to provide grievance forms is sufficiently adverse to support a claim of retaliation. This conclusion is further supported by the fact that the alleged retaliatory conduct did not hinder or deter Riddick from seeking relief in this case and many others filed against Red Onion personnel since 2020.[6] While "not dispositive," Riddick's "actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Constantine*, 411 F.3d 474 at 500.

For these reasons, the court concludes that Riddick has failed to state a cognizable claim of retaliation against Collins, McGowan, Ridings, and Fuller. Accordingly, the retaliation claims asserted as part of Claims 5 and 11 will be dismissed.

---

[6] *See supra* n.1 (listing the more than 20 cases filed by Riddick since 2020).

#### 4. Claim 7

In Claim 7, Riddick alleges that defendants B. Mullins, J. Mullins, J.H. Mullins, and A. Gardner ransacked his cell on September 3, 2020, in retaliation for "talking to SIU" about the assault by the other inmate and the fact that he planned to file a lawsuit against the correctional officers responsible for escorting the inmate. (Compl. 5–6.) Riddick alleges that these four defendants threw away ink pens, tossed paperwork on the floor, and inked pictures. Riddick also alleges that B. Mullins took headphones without providing him a confiscation form and returned them two weeks later. (*Id.* at 5.) Based on these allegations, Riddick claims that B. Mullins, J. Mullins, J.H. Mullins, and Gardner violated his rights under the First, Fourth, and Fourteenth Amendment rights. (*Id.* at 16.)

Riddick asserted the same allegations against the same defendants in another case filed in this district. *See Riddick v. McGowan*, No. 7:21cv00138, 2021 WL 3464933, at *1 (W.D. Va. Aug. 6, 2021). In that case, the court concluded that the allegations failed to state a cognizable claim for retaliation, explaining that,

> [w]hile Riddick's complaint to investigators may have been a protected First Amendment activity, the disturbance, or even confiscation of or damage to personal property, without more, does not constitute a sufficiently adverse action so as to satisfy the second element of the retaliation analysis, which requires an action by defendant that would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Courts have held that similar types of actions against prisoners were not sufficiently adverse actions to support a retaliation claim. Nor has the alleged retaliation chilled Riddick from pursuing this lawsuit,
>
> along with numerous other lawsuits that he continues to prosecute in this court. For these reasons, Riddick's retaliation contention in claim(2) fails to state a claim for which relief can be granted and must be dismissed.

*Id.* at *3 (internal quotation marks and citations omitted).

The complaint in this case repeats the same allegations and does not include any additional factual content that would support a claim of retaliation. Accordingly, for the reasons provided in *Riddick v. McGowan*, the retaliation claim asserted in Claim 7 must be dismissed.

Riddick's allegations regarding the cell shakedown also fail to state a claim under the Fourth Amendment. As a convicted inmate, Riddick has no constitutionally protected privacy interest in his prison cell. *See Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). Consequently, "the Fourth Amendment proscription against unreasonable searches does not apply." *Id.* at 526.

To the extent that Riddick is asserting a due process claim based on the alleged confiscation of his headphones, such claim is also subject to dismissal. As the court explained in *Riddick v. McGowan*, "[a]n allegation that a person under color of state law intentionally or negligently deprived an inmate of property while acting outside the scope of official policy or custom cannot state an actionable claim under § 1983 if a meaningful post-deprivation remedy is available." 2022 WL 3464933, at *3 n.4 (citing *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527, 538–39 (1981), *overruled in relevant part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). Because the VDOC's grievance procedure and the Virginia Tort Claims Act[7] provide meaningful post-deprivation remedies, Riddick has no viable due process claim for the deprivation of property. *See Keen v. SVRJA*, No. 7:22cv00102, 2023 WL 2042482, at *2 (W.D.

---

[7] *See* Va. Code Ann. § 8.01-195.3 ("[T]he Commonwealth shall be liable for . . . loss of property . . . caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment . . . .").

Va. Feb. 16, 2023) (citing *Balance v. Clarke*, No.7:15cv00645, 2017 WL 1169747, at *7 (W.D. Va. Mar. 28, 2017); *Wadhams v. Procunier*, 772 F.2d 75, 77–78 (4th Cir. 1985)). For all of these reasons, the motion to dismiss will be granted as to Claim 7.

### 5. Claim 14

In Claim 14, Riddick alleges that defendants Collins, Kegley, and Clevinger denied him "access to legal services by not providing [him] a notary [for] this complaint [and] out of retaliation." (Compl. 20.) Based on these allegations, Riddick claims that the defendants violated his rights under the First, Sixth, and Fourteenth Amendments. (*Id.*)

State inmates "have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (internal quotation marks and citation omitted); *see also Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995). To the extent that Riddick's allegations regarding the provision of notary services could be construed as a claim of denial of access to the courts, he has not alleged facts sufficient to show that he suffered an "actual injury," as required to state such claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (emphasizing that a prisoner must "identify an actual injury" resulting from the denial of access and "cannot rely on conclusory allegations"). To satisfy the "actual injury" requirement, a plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded as a result of the defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quoting *Lewis*, 518 U.S. at 353 & n.3).

Here, Riddick does not plausibly allege that the denial of access to notary services hindered his ability to pursue this action. The Federal Rules of Civil Procedure do not require complaints to be notarized. Likewise, affidavits do "not need to be notarized, only signed and declared true and correct under penalty of perjury." *Tate v. Starks*, 444 F. App'x 720, 728 n.8 (5th Cir. 2011) (citing 28 U.S.C. § 1746)). Consequently, the alleged failure to provide notary services does not state a cognizable claim for denial of access to the courts.[8]

Riddick's allegations are also insufficient to state a plausible violation of the Sixth Amendment, which guarantees certain rights to criminal defendants. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). Riddick does not allege that he needed a notary for a criminal matter; instead, he faults the defendants for not providing access to notary services for his civil complaint. Accordingly, Riddick has not stated a viable claim for relief under the Sixth Amendment.

Finally, Riddick has not plausibly alleged that the lack of access to notary services would likely deter a person of ordinary firmness from exercising his rights under the First Amendment. *Constantine*, 411 F.3d at 500. Therefore, to the extent that Riddick suggests that the denial of access to a notary was an act of retaliation, the court concludes that such claim must be dismissed.

For these reasons, the court will grant the motion to dismiss filed by the VDOC defendants.

---

[8] And Riddick knows this. His complaint in this case was not notarized. (*See* Compl. pg. 21.)

### B. Riddick's Motion to Amend

The court turns now to Riddick's motion to amend. As indicated above, Riddick seeks to add Correctional Officer J. Deel as a defendant. Riddick alleges that Deel was working in the control booth on July 17, 2020, when he was assaulted by the other inmate. Riddick claims that Deel violated his rights under the Eighth Amendment by failing to stop the assault. Because Riddick's conclusory allegations do not state a plausible claim for relief against Deel, the motion to amend will be denied as futile. *See Cominelli v. The Rectors & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 712 (W.D. Va. 2008) (noting that leave to amend should be denied if the amendment would be futile).

As explained above, the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 832. But "'not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety.'" *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)). For liability to attach, the inmate must show that the prison official acted with deliberate indifference to his health or safety. *Id.* at 127–28. As relevant here, "courts have found that 'a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability' if the officer had a reasonable opportunity to act and 'simply refused to do so.'" *Id.* at 128 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). On the other hand, if an officer does not have a reasonable opportunity to intervene, he cannot be held liable under § 1983. *See Smith*, 293 F.3d at 651 (emphasizing that "an officer is only liable if there is a realistic and reasonable opportunity to intervene").

According to Riddick's complaint, the other inmate punched him several times on the lower level of the housing unit. But assuming that Deel could have observed the assault from his vantage point in the control booth, Riddick does not plausibly allege that Deal had a reasonable opportunity to intervene. Because the claim that Riddick seeks to add would not survive a motion to dismiss, the motion to amend will be denied.

### IV. CONCLUSION

For the reasons stated, the court will grant the VDOC Defendants' motion to dismiss and deny Riddick's motion to amend. To the extent that Riddick's response to the motion to dismiss requests summary judgment on any of the claims for which the VDOC Defendants have sought dismissal, the request for summary judgment will be denied as moot.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 31st day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE